IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PARAGON INDUSTRIES, L.P. | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3-07CV2183-M |
| v. | § | |
| | § | |
| DENVER GLASS MACHINERY, INC. | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion of Defendant Denver Glass Machinery to Transfer Venue to the District of Colorado (Docket No. 12). For the reasons stated below, Defendant's Motion is **GRANTED**.

**I. BACKGROUND**

Defendant Denver Glass is a Colorado corporation with its principal place of business in Englewood, Colorado. Plaintiff Paragon Industries, L.P. is a Texas limited partnership.

Denver Glass and Paragon both sell glass making machines. On December 10, 2007, Denver Glass obtained a trademark for a machine used to manufacture blue glass. Thereafter, Denver Glass sent a letter to Paragon demanding that Paragon cease sale of its glass making machines, requesting a response by January 1, 2008. Paragon's counsel sought an extension of time to respond, and Denver Glass extended the deadline to January 17, 2008. On December 28, 2007, Paragon filed a declaratory judgment action in this Court. Denver Glass's counterclaims asserted violations of the Lanham Act and the Colorado Consumer Protection Act, as well as breach of contract, promissory estoppel, and unfair competition. On January 30, 2008, Denver

Glass filed its motion to transfer the case to the District of Colorado, pursuant to 28 U.S.C. § 1404(a).

## II. ANALYSIS

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this statute is to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration. *Matosky v. Manning*, No. SA-07-CV-051-WRF, 2007 WL 1512027, *2 (W.D. Tex. May 18, 2007).

When a motion is brought challenging the Plaintiff's chosen forum, the Defendant has the burden of demonstrating why the forum should be changed. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). "The party seeking a change of venue must demonstrate that the balance of convenience and justice weighs heavily in favor of transfer." *Von Graffenreid, Von Burg, Kaufmann, Winzeler Asset Mgmt., Ltd. v. Craig*, 246 F. Supp 2d 553, 563 (N.D. Tex. 2003) (citing *Consulting, LLC v. Engineered Fastener Co.*, No. 2-02-CV-0308-BD, 2002 WL 31246770, *1 (N.D. Tex. Oct. 2, 2002)).

A district court must consider a number of private and public interest factors when determining whether to grant a motion to transfer. *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The public interest factors are: (1) the administrative difficulties flowing

from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems regarding conflict of laws or the application of foreign law. *Id.*

Because Defendant, a Colorado corporation, would be subject to personal jurisdiction in the District of Colorado, Plaintiff's suit could have been filed in that forum. *See* 28 U.S.C. § 1391(b)(1). Accordingly, the Court must determine whether, in the interest of justice, the private and public interest factors support transfer to the District of Colorado.

### 1. **Private Interest Factors**

   A. *Relative ease of access to sources of proof*

The accessibility of evidence remains a relevant consideration, even though the ability to transfer information electronically has diminished this factor's significance. *In Re Volkswagen*, 371 F.3d at 203 (listing factors to be considered). Defendant states that its trademark documents and sales and bank records are located in the District of Colorado. Plaintiff responds that 200,000 pages of documents relating to sales and advertising for the glass making equipment are located in the Northern District of Texas. Thus, evidence relevant to the parties' claims is located in both districts. The Court concludes that this factor is neutral and does not support granting or denying a transfer of venue.

   B. *Availability of compulsory process to secure the attendance of witnesses and cost of attendance for willing witnesses*

Federal Rule of Civil Procedure 45(c)(3)(A)(iii) mandates that a subpoena *must* be quashed or modified by the issuing court when the subpoena requires "a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place

within the state where the trial is held. . . ." Here, Defendant contends that several of its key witnesses are Colorado residents who live more than 100 miles from this Court and within 100 miles of the District of Colorado and, therefore, would be beyond this Court's subpoena power. These witnesses include the following individuals who Defendant claims will testify as indicated: (i) a former employee of the Defendant, who will testify that a customer confused a Paragon kiln with a Denver Glass product; (ii) the Defendant's current president, who will testify that Paragon's president falsely agreed to cease using the color blue for its machines if Denver Glass obtained a trademark; and (iii) four other witnesses, who will testify to mistaking Paragon's ovens and kilns for those manufactured by Defendant. Plaintiff argues that several of *its* key witnesses are Texas residents who live in this district and more than 100 miles from the District of Colorado. According to Plaintiff, these witnesses include the following: (i) bankers and accountants, who will testify to Defendant's claims for damages, accounting, and the imposition of a constructive trust; (ii) Plaintiff's employees and officers, who will testify to Defendant's alleged damages and that there was no confusion in the marketplace in distinguishing between Plaintiff's and Defendant's products; and (iii) seven witnesses, who will testify to both the widespread industry use of the color blue and the lack of confusion in the marketplace.

If the Court denies the transfer, key witnesses identified by the parties would be beyond the Court's subpoena power and, therefore, would only be available to testify live if they appeared voluntarily. Hence, this factor is neutral and does not support granting or denying the motion to transfer.

C. *Practical considerations for expeditious adjudication*

Plaintiff, citing *Sanders v. State Street Bank and Trust Co.*, 813 F.Supp. 529, 536 (S.D. Tex. 1993), argues that transferring venue involves inherent delays. In *Sanders*, the court concluded that transferring a case *may* produce delays where the transferee forum has a substantially larger case load than the transferor forum. *Id.* at 537. Here, however the parties did not analyze the respective case loads in the District of Colorado and the Northern District of Texas, and, therefore, this factor is neutral.

## 2. Public Interest Factors

A. *The administrative difficulties flowing from court congestion*

The parties do not argue that either venue would present administrative difficulties flowing from court congestion. This factor is neutral.

B. *The local interest in having localized interests decided at home*

"The preferred forum is that which is the center of gravity of the accused activity." *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 3:02-CV-2538, 2003 WL 21251684, *3 (N.D. Tex. May 23, 2003) (applying this factor to a patent infringement suit); *see also Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F.Supp.2d. 1039, 1044 (S.D. Tex. 2007). "Indeed, 'the trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.'" *Minka Lighting, Inc.*, No. 3:02-CV-2538, 2003 U.S. Dist. LEXIS 8862, *12 (quoting *S.C Johnson & Son, Inc. v. Gillette Co.*, 571 F.Supp. 1185, 1188 (N.D. Ill. 1983)). In determining the center of gravity of an activity, a district court should consider the location of the product's development, testing, research, and production. *Id.*

Here, the design, production and manufacture of Plaintiff's allegedly infringing products all occurred in the Northern District of Texas. Accordingly, the alleged wrongful activity occurred in the Northern District of Texas, and thus this district's residents have an interest in resolving the dispute locally. *See QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 664 (E.D. Tex. 2007). However, Denver Glass, a Colorado corporation, has asserted multiple counterclaims, including violations of the Lanham Act and the Colorado Consumer Protection Act, and claims for breach of contract, promissory estoppel, and unfair competition. The citizens of Colorado have a substantial interest in vindicating the rights of a Colorado corporation, particularly where the litigation centers on alleged violations of that corporation's rights. *See Lincoln Imports, Ltd., Inc. v. Santa's Best Craft, Ltd.*, No. H-07-2803, 2008 WL 1781020, *3 (S.D. Tex. Apr. 16, 2008) (concluding that residents of the state in which the plaintiff resides "have at least the same interest" in having the dispute resolved locally as residents of the state in which the infringing conduct allegedly occurred). This is especially true because, as the Court finds below, Denver Glass is properly the plaintiff in the litigation. Accordingly, because the citizens of Texas and Colorado have equivalent, countervailing interests in local adjudication of the dispute, this factor is neutral.

C. *The familiarity of the forum with the law that will govern the case and the application of foreign law*

The crux of this case arises under the Lanham Act, 15 U.S.C. § 1125. Both fora are equally capable of construing and applying federal law. Although the District Court of Colorado likely has more experience adjudicating claims under Colorado law, this Court can certainly familiarize itself with the relevant state law. *See Busch v. Robertson*, No. 3:05-CV-2043-L, 2006 U.S. Dist. LEXIS 26813, *19 (N.D. Tex. May 5, 2006) (finding that a Virginia district court was capable of adjudicating Texas state law claims); *Sanders*, 813 F. Supp. at 536 (suggesting that a

6

Texas district court was capable of adjudicating an Illinois state law claim). Thus, this factor only modestly favors transferring the case to the District of Colorado. *See Moreno v. Povery Point Produce, Inc.*, 243 F.R.D. 265, 274 (S.D. Tex 2007) (denying transfer of a case involving claims under Louisiana state law).

D. *The avoidance of unnecessary problems of conflict of laws*

The parties do not allege any conflict of laws issues, and thus this factor is neutral.

### 3. **Plaintiff's Choice of Forum**

A plaintiff's choice of forum is entitled to substantial weight when determining whether a transfer of venue is appropriate. *In re Horseshoe Entertainment*, 337 F.3d 429, 435 (5th Cir. 2003). Generally, courts do not disturb a plaintiff's choice of forum "[u]nless the balance of factors strongly favors the moving party." *TIG Ins. Co. v. NAFCO Ins. Co., Ltd.*, 177 F.Supp.2d 561, 569 (N.D. Tex. 2001) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

Courts make an exception to the "first-filed" rule "when justice or expediency requires." *Metro Optics, Inc. v. Contex Inc.*, No. 3:95-CV-2157-T, 1996 WL 302697, *1 (N.D. Tex. Mar. 14, 1996). One well-recognized exception is when a party files a declaratory judgment action, in anticipation of suit by its adversary. *Id.* Anticipatory suits "deprive a potential plaintiff of his choice of forum, [and are] also one of the compelling circumstances courts cite when declining to apply the first-filed rule." *Frank's Tong Service, Inc. v. Grey Wolf Drilling Co., L.P.*, No. H-07-637, 2007 WL 5186798, *4 (S.D. Tex. Sept. 11, 2007). In these cases, deferring to the plaintiff's choice of forum "create[s] disincentives to responsible litigation by rewarding the winner of a race to the courthouse." *Id.* (citing *Davox Corp. v. Digital Systems Intern., Inc.*, 46 F. Supp. 144, 148 (D. Mass. 1993)). Courts thus disfavor anticipatory suits as improper forum-shopping. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983).

7

In determining whether a suit is anticipatory, courts scrutinize the parties' activities prior to filing of a suit. Courts will generally not allow a party to select its preferred forum by filing an action for a declaratory judgment when it has notice that another party intends to file suit involving the same issues in a different forum. *Mill Creek Press, Inc. v. Thomas Kinkade Co.*, No. 3:04-CV-1213-G, 2004 WL 2607987, *7 (N.D. Tex. Nov. 16, 2004) (Fish, J.). "Lengthy negotiations and the tenor of the party's (sic) relationship" may disclose to the opposing party that suit is imminent, prompting anticipatory litigation. When a plaintiff files an anticipatory suit in order to avoid litigation by the defendant, the "true plaintiff" is divested of his right to select the proper forum. Allowing an alleged infringer to choose the forum subverts the real plaintiff's advantage in choosing the forum. In *Mill Creek*, the court concluded that the plaintiff filed a declaratory judgment suit in anticipation of litigation by the defendant alleging infringement. The plaintiff participated in settlement negotiations and the defendant had specified a deadline for resolution of the dispute to avoid litigation, all demonstrating that the plaintiff was aware of the possibility of suit. The Court determined that "the swiftness with which the plaintiffs reacted to [the] supposed ultimatum indicate[d] that the plaintiffs simply wanted to deprive the party allegedly aggrieved of its choice of forum."

Here, like the situation in *Mill Creek*, the parties' pre-litigation communications alerted Paragon to the possibility of suit. Denver Glass demanded that Paragon cease use of Denver Glass's patented glass making machines. Paragon requested, and Denver Glass granted, an extension of time for Paragon to respond to Denver Glass's demand. Before the extension expired, Paragon filed its declaratory judgment action. These facts indicate that Paragon filed suit in anticipation of litigation by Denver Glass.

Because Paragon filed its declaratory judgment action in anticipation of Denver Glass's infringement suit, Paragon's preferred forum is entitled to no weight. The preferred forum of Denver Glass—the true plaintiff in the litigation—will be accorded significant weight.

Considering all of the § 1404(a) factors, the Court concludes that the District of Colorado is the most appropriate venue for litigation of this case. Finding that the balance of convenience and justice weighs in favor of transfer, the Court **GRANTS** Defendant's Motion to Transfer Venue.

**SO ORDERED.**

**DATED**: August 22, 2008.

*[signature]*
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**